UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
:
SYLVIA ANCRUM,                                                     :
:
:
Plaintiff,                          :
:      23 Civ. 10978 (JPC)
-v-                                :
:      OPINION AND ORDER
:
NEW YORK CITY DEPARTMENT OF                                        :
ENVIRONMENTAL PROTECTION,                                          :
:
Defendant.                          :
:
-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

    Sylvia Ancrum, a black woman, has worked at the New York City Department of Environmental Protection (the "Department") since 2016.  In February 2022, Ancrum reported to her supervisor that she was being followed by unknown men, and that some of these men had been riding the bus with her.  She also reported that unknown people in vehicles had been following her, observing her outside her home, and shining their high beams into her bedroom.  Finally, Ancrum reported that in December 2021, one of her co-workers, Jose Guzman, told her that other unspecified "laborers" had said that she had herpes, gave oral sex to men, and had a "dick" in her mouth.

    Four months after Ancrum made these reports, the Department brought her up on a variety of disciplinary charges, resulting in a multi-day suspension and referral to an employee assistance program.  Then, two years later, Ancrum discovered that the screensaver of her office computer, which usually depicted scenery, had been changed to an image of an orangutan.

    Based on these events, Ancrum sued the Department for sex discrimination.  She alleges causes of action for disparate treatment and a hostile work environment under Title VII of the Civil

Rights Act of 1964, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Ancrum also alleges a claim for racial discrimination under 42 U.S.C. § 1981.

The Department moves to dismiss each of Ancrum's causes of action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court dismisses Ancrum's causes of action under Title VII and Section 1981, and declines to exercise supplemental jurisdiction over her state and city law causes of action and thus dismisses those as well. But the Court will *sua sponte* allow Ancrum the opportunity to replead her claims if she believes in good faith that she can resolve the pleading deficiencies discussed in this Opinion and Order.

## I. Background

**A.    Factual Background**[1]

The Department, a New York City agency based in Queens, is responsible for building, maintaining, and operating the city's water systems and reservoirs, and also operates wastewater treatment plants and other facilities. Compl. ¶ 15. Ancrum joined the Department in December 2016 and works as a Principal Administrative Associate in its Bureau of Water and Sewer Operations. *Id.* ¶ 16. In that role, Ancrum was assigned to the overnight shift, where her job duties largely consist of answering emergency calls and serving as a point of contact for other communications regarding any emergencies that may arise. *Id.* ¶ 17. Ancrum reports to Malarie Gilmore, her supervisor, who in turn reports to Section Chief Natan Mandelbaum. *Id.* ¶¶ 18-19.

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Complaint, Dkt. 1 ("Compl."). *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor").

In February 2022, Ancrum reported to Mandelbaum that "she had felt that she was a victim of sexual harassment on the job by male coworkers." *Id.* ¶¶ 21-22. Specifically, Ancrum reported that she "was being followed by unknown men on her bus ride to work and sometimes saw cars outside of her home that she believed were observing her." *Id.* ¶ 26. Ancrum's complaints also stated that "vehicles were following her in the morning when she took her grandchildren to school." *Id.* ¶ 27. Similarly, Ancrum claimed that "cars were shining their high beams into her bedroom at her home." *Id.* ¶ 28. And in one of her complaints, Ancrum alleged that Guzman, one of her coworkers on the overnight shift, had made sexually charged comments to her in December 2021. *Id.* ¶ 22. According to Ancrum, Guzman told her that unknown "laborers," assumed to be the Department's "employees or contractors," had stated that "there was a camera in the office" and that Ancrum "has herpes and gave oral sex out to men." *Id.* ¶¶ 23-24. Ancrum also claimed that Guzman also told her that the "laborers" had said that she "ha[d] a dick in [her] mouth." *Id.* ¶ 24.

Mandelbaum did not investigate these reports or refer them for an investigation. *Id.* ¶¶ 29-31. Instead, Mandelbaum informed Ancrum of mental health resources available at the Department, including the availability of a social worker, Jonathan Glotzer, who focused on "providing counseling services and helping staff and employees at the agency find the mental health assistance and other resources they may need at times of crisis." *Id.* ¶ 34. Mandelbaum also provided Ancrum with Family and Medical Leave Act paperwork, which Ancrum declined to submit. *Id.* ¶¶ 33, 36. Then, without Ancrum's knowledge or consent, Glotzer "searched through [her] employment record and called [her] adult daughter and informed her that [Ancrum] was undergoing mental duress at work and sought family intervention and encourage[d] [Ancrum] to go on leave." *Id.* ¶ 35. Sometime later, the Department appointed a medical doctor to evaluate

3

Ancrum's "mental capacity and ability to work," but the doctor found "no mental impairment or incapacity." *Id.* ¶ 37. The Department also offered Ancrum treatment at a mental health program in Florida, which she turned down in favor of participating in the Department's in-house employee assistance program. *Id.* ¶ 38. Unsatisfied with the Department's handling of her concerns, Ancrum filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") on February 24, 2022. *Id.* ¶ 7.

Ancrum's relationship with the Department further soured in June 2022. That month, the Department charged Ancrum with over twenty disciplinary infractions relating to "time and attendance issues," her "work performance," and her "behavior at work." *Id.* ¶ 40.[2] The parties entered into an agreement resolving the disciplinary charges that required Ancrum to serve a ten-day work suspension (with five days held in abeyance) and agree to complete treatment through the Department's employee assistance program. *Id.* ¶ 41.

Ancrum alleges that she "continues to suffer from discrimination at work to this very day and has been subjected to pranks and belittlement." *Id.* ¶ 45. In November 2023, the harassment also took "a racial tone" as Ancrum found that her computer's screensaver, "which typically depicts scenery," "was switched without her knowledge to an orangutan hanging on a tree limb covering its mouth with a grin." *Id.* ¶¶ 46-47. Ancrum alleges that the orangutan image was set as her screensaver "by an unknown [Department] employee as a racial prank or form of harassment on [Ancrum] due to her race." *Id.* ¶ 48. After Ancrum reported the orangutan screensaver, the Department had its IT division remove the image from her computer but allegedly took no other action to investigate. *Id.* ¶¶ 49-51.

---

[2] According to the Department, it had started drafting the charges against Ancrum in July 2021. Compl. ¶ 43.

B.  **Procedural History**

Ancrum filed this civil action against the Department on December 19, 2023. Dkt. 1.[3] Her Complaint asserts claims for sex discrimination based on both direct discrimination and hostile environment theories under Title VII of the Civil Rights Act of 1964 (First Cause of Action), the NYSHRL (Second Cause of Action), and the NYCHRL (Third Cause of Action). Compl. ¶¶ 52-69. Ancrum also alleges a cause of action for racial discrimination under 42 U.S.C. § 1981 (Fourth Cause of Action). *Id.* ¶¶ 70-77.

On May 17, 2024, the Department moved to dismiss each of Ancrum's causes of action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkts. 12, 13, 14 ("Motion"). Ancrum opposed the Department's Motion on June 17, 2024. Dkt. 15 ("Opposition"). The Department filed a reply two weeks later. Dkt. 16 ("Reply").

## II.  Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, the Rule 12(b)(6) plausibility standard requires factual allegations sufficient to "'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged." *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (quoting *Twombly*, 550 U.S. at 556).

---

[3] Ancrum received a right-to-sue letter from the EEOC on September 25, 2023. Compl. ¶ 8.

### III.  Discussion

A.      **Ancrum's Title VII Claims**

In her First Cause of Action, Ancrum brings sex-based claims under Title VII for disparate treatment, a hostile work environment, and (perhaps) retaliation.  *See, e.g.*, Compl. ¶ 55 ("Defendant permitted sexual harassment and a hostile work environment for Plaintiff based on sex.").[4]  In relevant part, Title VII makes it unlawful for any covered employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  The statute also contains an anti-retaliation provision, which "makes it unlawful 'for an employer to discriminate against any . . . employee[] . . . because [that individual] opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII investigation or proceeding."  *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e-3(a)). Thus, Title VII allows claims based on disparate treatment (*i.e.*, that the employer took an adverse employment action on account of the employee's protected characteristic), retaliation (*i.e.*, that the employer took an adverse employment action because the employee engaged in protected activity, such as filing an EEOC charge), or a hostile work environment (*i.e.*, that the employer effectively required the employee to work in a discriminatorily abusive environment).  *See Banks v. Gen. Motors, LLC*, 81 F.4th 242, 269 (2d Cir. 2023) ("Congress intended to prohibit all practices in whatever form which create inequality in employment

---

[4] It is unclear whether Ancrum intends to assert a retaliation claim distinct from her disparate treatment claim.  The Complaint does not expressly plead retaliation in violation of Title VII, *see generally* Compl. ¶¶ 52-58, and Ancrum makes no effort to defend a retaliation theory in opposing the Department's motion to dismiss the Complaint in its entirety, *see generally* Opposition.  But because the Complaint emphasizes the fact that Ancrum was disciplined following her reports of sexual harassment and filing of an EEOC charge, *see, e.g.*, Compl. ¶¶ 39-40, in an excess of caution, the Court construes the Complaint as raising a retaliation claim as well.

6

opportunity due to discrimination on the basis of race, religion, sex, or national origin." (internal quotation marks omitted)). For the reasons described below, Ancrum does not state a plausible discrimination claim under any of these theories.

### 1. Ancrum Fails to Plausibly Allege Disparate Treatment or Retaliation.

In the absence of direct evidence of discrimination, disparate treatment and retaliation claims brought under Title VII are both subject to the familiar *McDonnell Douglas* burden-shifting framework. *See Bart v. Golub Corp.*, 96 F.4th 566, 569-70 (2d Cir. 2024) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Under that framework, a plaintiff lacking direct evidence of their employer's intent at the pleading stage must allege that "the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory [or retaliatory] intent." *Littlejohn*, 795 F.3d at 311, 315-16. Thus, the complaint "need only give plausible support to a minimal inference of discriminatory [or retaliatory] motivation," not to "the ultimate question of whether the adverse employment action was attributable to discrimination [or retaliation]." *Id.* at 311.

Even under this generous pleading standard, Ancrum's allegations fall well short of stating a plausible claim for sex discrimination. The only allegations of conduct potentially relevant to discriminatory intent are that, on what appears to be a single occasion in December 2021, Guzman informed Ancrum of offensive sexual comments that had been made about her by unidentified "laborers." Compl. ¶¶ 23-24. But beyond "presum[ing]" without elaboration that the laborers were "employees or contractors" of the Department, the Complaint provides no information about who they were or the original context of the statements. *Id.* ¶ 24. The Complaint, for instance, does not allege that either Guzman or the laborers were Ancrum's supervisors or otherwise played any role in the Department's decision to bring disciplinary charges against her in June 2022. Nor

does the Complaint contain facts suggesting that any person at the Department who *was* involved in disciplining Ancrum had engaged in any verbal or physical sexual misconduct or relied in any way on Guzman's comments in imposing discipline. *See Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 150 (2d Cir. 2010) ("The relevance of discrimination-related remarks does not depend on their offensiveness, but rather on their tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class." (internal quotation marks omitted)). At bottom, the Complaint is completely devoid of factual support allowing even a "minimal" inference that Ancrum's sex played a role in the discipline she faced. *See Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (explaining that dismissal of a disparate treatment claim is proper when the plaintiff fails "to plead any facts that would create an inference that any adverse action taken by any defendant was based upon her gender" (cleaned up)).

To the extent that Ancrum also asserts a separate retaliation claim, that claim fares no better because she fails to plead that the Department's decision to discipline her was motivated in any part by retaliatory animus. "A causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Littlejohn*, 795 F.3d at 319 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). Although Ancrum engaged in protected activity in February 2022 by, among other things, filing a discrimination charge with the EEOC, she again alleges no facts allowing any inference that the Department's decision to discipline her in June 2022 was causally linked to her protected activity. Ancrum does not, for instance, allege any facts directly suggesting retaliatory animus, such as comments made by any of the individuals involved

in handling her disciplinary matter or her discrimination complaints that might indicate a link between the two. She also does not allege the existence of any surrounding circumstances, such as retaliation against other employees who engaged in similar protected conduct, that might be probative of a retaliatory pattern.

Instead, Ancrum appears to rely only on the fact that she was disciplined after engaging in protected activity. But when, as here, "a party relies on the mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action, courts uniformly hold that the temporal proximity must be very close." *Raymond v. City of New York*, 317 F. Supp. 3d 746, 773-74 (S.D.N.Y. 2018) (internal quotation marks omitted); *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (same). Although adopting a bright-line rule would not be appropriate, in the context of a case like this one—where the plaintiff relies on temporal proximity in an effort to compensate for an utter lack of any other facts supporting an inference of retaliation—"very close" usually means about two or three months at most. *See Adams v. Ellis*, No. 09 Civ. 1329 (PKC), 2012 WL 693568, at *16 (S.D.N.Y. Mar. 2, 2012) (collecting cases). Because Ancrum was not disciplined until approximately four months after she engaged in the protected activity described in the Complaint and she alleges no other facts whatsoever that would allow the Court to draw even a minimal inference of retaliatory motive, her Title VII retaliation claim cannot survive based on temporal proximity alone.

Accordingly, the Court dismisses Ancrum's Title VII claim to the extent that it is based on a disparate treatment or retaliation theory.

### 2. Ancrum Fails to Plausibly Allege a Hostile Work Environment.

For Title VII purposes, a workplace is actionably hostile when it is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment."

*Littlejohn*, 795 F.3d at 320-21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Because the hostile environment standard has an objective and a subjective component, the plaintiff must allege both that the harassment was "'severe or pervasive enough that a reasonable person would find it hostile or abusive' and that the plaintiff 'subjectively perceive[d] the work environment to be abusive.'" *Moore v. Hadestown Broadway LLC*, 722 F. Supp. 3d 229, 245 (S.D.N.Y. 2024) (quoting *Littlejohn*, 795 F.3d at 321). In determining whether the plaintiff's work environment was objectively hostile, courts "must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Littlejohn*, 795 F.3d at 321 (quoting *Harris*, 510 U.S. at 23). To survive dismissal under Rule 12(b)(6), however, "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Patane*, 508 F.3d at 113 (internal quotation marks omitted).

When harassment takes the form of offensive comments, the existence of a hostile work environment "typically depends upon the quantity, frequency, and severity" of the verbal abuse. *Donahue v. Asia TV USA Ltd.*, 208 F. Supp. 3d 505, 514 (S.D.N.Y. 2016) (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110-11 (2d Cir. 1997)); *see also Harris*, 510 U.S. at 21 (explaining that the "mere utterance of an . . . epithet which engenders offensive feelings in a[n] employee does not sufficiently affect the conditions of employment to implicate Title VII" (citation omitted)). Here, the only well pleaded allegation of potential sexual harassment in Ancrum's Complaint is that in December 2021, a co-worker (Guzman) told her that he had heard other unknown "laborers" claim that she "has herpes and gave oral sex out to men" and that she had a

10

"dick in [her] mouth." Compl. ¶¶ 23-24. While there is no question that comments like these are highly offensive, this alleged isolated episode of sexually demeaning language is insufficient to plausibly show that Ancrum was subject to the sort of "steady barrage of opprobrious [sexual] comments" that gives rise to a hostile environment. *Levy v. NYC Health + Hosps.*, 660 F. Supp. 3d 220, 234 (S.D.N.Y. 2023) (internal quotation marks omitted). Nor does the Complaint allege sufficient facts to plausibly show that this single incident was "extraordinarily severe" such that it would suffice to establish a hostile work environment on its own. *Banks*, 81 F.4th at 262 (internal quotation marks omitted). Thus, "[a]lthough the alleged comments are despicable and offensive, they fail to constitute discriminatory behavior that is sufficiently severe or pervasive to cause a hostile environment." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 713 (2d Cir. 1998) (holding that the plaintiff failed to allege a hostile work environment claim on the basis of allegations "that one [of the plaintiff's] supervisor[s] made, on occasion, racist remarks and [that] one such comment was directed at [the plaintiff]"); *see also LaSalle v. City of New York*, No. 13 Civ. 5109 (PAC), 2015 WL 1442376, at *7 (S.D.N.Y. Mar. 30, 2015) (concluding that allegations that the plaintiff's coworkers "called her a 'bitch' as well as other derogatory and/or sexist names" and said that "anybody can get her ass" were not "sufficiently frequent, severe, or pervasive to constitute a hostile work environment").[5]

---

[5] The Court notes that it is unclear from the Complaint whether Guzman relayed the laborers' offensive comments to Ancrum in a harassing manner or, instead, was simply carrying out what he felt was a moral obligation to make her aware of what others were saying behind her back. *See Kleinman v. Fashion Inst. of Tech.*, No. 16 Civ. 4348 (KPF), 2017 WL 3016940, at *12 (S.D.N.Y. July 14, 2017) (dismissing a hostile environment claim where the plaintiff's "allegations suggest, at worst, that [her] co-workers spoke ill of [her] behind her back"). The Complaint also fails to allege who the "laborers" were that supposedly originated the comments and whether those individuals were part of the same workplace as Ancrum or had any employment relationship with the Department. The Complaint only makes the unsubstantiated statement that "presumably" these laborers were "Defendant employees or contractors." Compl. ¶ 24. Even drawing all possible

Apart from Guzman's alleged comments in December 2021, the only allegations that Ancrum presents in support of her hostile environment claim concern unknown "men" following her on the bus and in vehicles. *See* Compl. ¶ 26 (alleging that Ancrum "was being followed by unknown men on her bus ride to work and sometimes saw cars outside of her home that she believed were observing her"); *id.* ¶ 27 (referencing "men" who started "riding the bus with [Ancrum]" and alleging that "vehicles were following her in the morning when she took her grandchildren to school"); *id.* ¶ 28 (alleging that "cars were shining their high beams into [Ancrum's] bedroom at her home"). The Complaint, however, contains no factual detail regarding the identities of the men who were allegedly following Ancrum, their motivations in doing so, or what their relationship (if any) to the Department was. Thus, the Complaint contains no factual basis that would allow the Court to infer that these events constituted sexual harassment or were in any way connected to Guzman's December 2021 comments or to Ancrum's workplace in general. And Ancrum's drive-by allegation that she "continues to suffer from discrimination at work to this very day and has been subjected to pranks and belittlement," *id.* ¶ 45, is likewise "too vague to be actionable." *Makhsudova v. City of New York*, No. 20 Civ. 10728 (KPF), 2022 WL 1571152, at *11 (S.D.N.Y. May 18, 2022); *see also Lawtone-Bowles v. City of New York*, No. 17 Civ. 8024 (WHP), 2019 WL 652593, at *4 (S.D.N.Y. Feb. 15, 2019).[6]

For these reasons, Ancrum's Complaint fails to plausibly allege facts tending to show that she was subject to severe or pervasive sexual harassment. Thus, the Court dismisses her hostile

---

inferences from these allegations in Ancrum's favor, however, the alleged harassing comments, as described in the Complaint, would still fail to satisfy the severe-or-pervasive standard.

[6] To the extent that Ancrum relies on the discipline she faced in June 2022 and Glotzer's conduct in responding to the apparent emotional difficulties she was experiencing at work as additional instances of harassment, she has failed to allege facts sufficient to allow an inference that these episodes were motivated in any part by her sex. *See supra* III.A.1.

environment claim under Title VII. Because the Court also dismisses any Title VII claim based on a disparate treatment or retaliation theory, *see supra* III.A.1, the First Cause of Action is dismissed in its entirety.

B.     **Ancrum's Section 1981 Claim**

Ancrum also alleges a claim for a racially hostile work environment under 42 U.S.C. § 1981 based on the screensaver of her work computer being changed to an image of an orangutan. *See* Compl. ¶¶ 46-51, 70-77. Because Section 1981 does not apply to state or municipal actors, *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018), the Court construes this claim as arising under 42 U.S.C. § 1983 instead. *See Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 447 (S.D.N.Y. 2023) (describing the general practice of courts in this Circuit of construing Section 1981 claims brought against municipal defendants as arising under Section 1983). As construed under Section 1983, Ancrum's racial harassment claim must be dismissed because her Complaint does not allege that she was harassed pursuant to any municipal policy or custom, which is required to state a claim against a municipal defendant like the Department. *See Spencer v. NYC Dep't of Educ.*, No. 22 Civ. 10712 (JLR), 2024 WL 642943, at *8 (S.D.N.Y. Feb. 15, 2024) (denying as futile leave to add a Section 1981/1983 claim against a New York City agency where the proposed complaint failed to allege that the challenged acts of harassment "were performed pursuant to a municipal policy or custom" (quoting *Duplan*, 888 F.3d at 621)). Instead, Ancrum attributes the lone act of racial harassment alleged in her Complaint—the placement of an orangutan screensaver on her work computer—to an unknown employee who wanted to play a

"racial prank" on her.  Compl. ¶ 48.[7]  Accordingly, the Court dismisses Ancrum's Fourth Cause of Action, whether construed under Section 1981 or Section 1983.

C.     **Ancrum's State and Municipal Claims**

In addition to her two federal causes of action, Ancrum asserts discrimination claims under the NYSHRL and the NYCHRL.  *Id.* ¶¶ 59-64.  The only jurisdictional basis that the Complaint alleges for these claims is supplemental jurisdiction.  *See* 28 U.S.C. § 1367(a); Compl. ¶ 5.  A court's exercise of supplemental jurisdiction, however, is discretionary, and "[i]t is well settled that where . . . the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."  *Klein & Co. Futures, Inc. v. Bd. of Trade of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006).  This case is no exception: all federal causes of action have been dismissed for failure to state a claim, the litigation is still at its very early stages, and no exceptional circumstances are present that would justify a departure from the principle that the dismissal of all federal causes of action from a complaint "will usually result in the dismissal of the state-law claims."  *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018).

---

[7] In moving to dismiss, the Department contends that it investigated the change to Ancrum's computer screen and "discovered that the orangutan screensaver is a default image included within Microsoft Windows' revolving lock screens."  Motion at 7; *see* Dkt. 14-3 (email from a clerical associate with the Department's Equal Employment Opportunity office opining that there is "some credence to the idea that the 'monkey' lock screen image is simply part of" the optional lock screen setting on Windows).  The Department further represents that it subsequently removed the orangutan screensaver from Ancrum's computer.  Motion at 7.  At the pleading stage, however, the Court must rely on the factual allegations in Ancrum's Complaint rather than on the Department's purported evidence to the contrary.  But regardless of whether the orangutan screensaver was a default rotating image or intentionally placed on Ancrum's computer by a co-worker as some kind of racial prank, it does not support her claim under Section 1983.

Accordingly, the Court declines to exercise supplemental jurisdiction over Ancrum's claims under the NYSHRL and the NYCHRL, and dismisses those causes of action without prejudice.

### D. *Sua Sponte* Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Because this is the first time that the Court has ruled on the plausibility of Ancrum's pleading, the Court *sua sponte* grants Ancrum leave to amend. *See Khodeir v. Sayyed*, 323 F.R.D. 193, 197 (S.D.N.Y. 2017) ("[A] court has the discretion to grant leave to amend *sua sponte* even when the amending party has not moved for leave to amend the [pleading]." (internal quotation marks omitted)). Ancrum, however, should only file an amended complaint if she believes in good faith that she can correct the deficiencies identified in this Opinion and Order through the addition of concrete factual allegations that plausibly support each element of her claims.

### IV. Conclusion

For these reasons, the Court grants the Department's motion to dismiss. Ancrum's Complaint is dismissed without prejudice to filing an amended complaint on or before January 6, 2025. Ancrum is cautioned that, absent a timely request for an extension, the failure to file an amended complaint by the deadline to do so will result in the dismissal with prejudice of her First and Fourth Causes of Action. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 12.

SO ORDERED.

Dated: December 6, 2024
      New York, New York

                                                  JOHN P. CRONAN
                                        United States District Judge